PARKER *v.* TULLOS, SHERIFF.*

(Division A.　April 9, 1928.)

[116 So. 531.　No. 27115.]

*Corpus Juris-Cyc. References: Bail, 6CJ, p. 955, n. 32; p. 989, n. 5; *Habeas Corpus*, 29CJ, p. 193, n. 24; As to right of appeal from judgment in *habeas corpus* proceedings, see 12 R. C. L. 1256; 2 R. C. L. Supp. 1580; As to right to bail in capital cases, see annotation in 39 L. R. A. (N. S.) 761; 3 R. C. L. 13.

*R. S. Tullos* and *S. R. Parker*, for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *R. S. Tullos,* for appellant, and *Rufus Creekmore,* for appellee.

McGowen, J. Wilson Parker, appellant, filed his petition for a writ of *habeas corpus* in the circuit court of Smith county, addressed to the judges of the supreme court, or the chancellor, or the circuit judge, of that judicial district. He alleged that, on a charge of murder, he was unlawfully detained by the sheriff of that county because he had been remanded to jail without bail by a justice of the peace. He prayed for a writ of *habeas corpus,* and that he be enlarged upon bail.

The sheriff answered that he held the defendant, the relator, by virtue of a *mittimus* issued by Miller, the justice of the peace, upon his judgment remanding the relator to jail without bail.

The matter was heard before the circuit judge; the relator was denied bail, and was again remanded to jail to await the action of the grand jury. From this judgment, the relator appeals to this court.

The facts in this case disclose that on the 9th day of December, 1927, Poley Ainsworth was killed by Wilson Parker, the said Parker being about twenty-two years of age, and Ainsworth, the deceased, about fifty years of age. On Friday, the 10th day of December, 1927, the body of Ainsworth was found lying close beside the bank of a small stream, with a cut place, just above his ear, about an inch long from which blood had run down over his face and upon his clothes. His trouser legs appeared to be wet from his waist down. In the vicinity was found a stick about the size of a man's arm, and in the pockets of the deceased were found three matches, a handkerchief, a closed pocket knife, and a plug of tobacco.

On the morning of the difficulty, the relator, Parker, went to the home of the deceased; they ate dinner together, were friendly, and later left together in search of mules belonging to the defendant's father. No more

was seen of the deceased until his body was found by some small school children. Late that afternoon the defendant, Parker, apparently drunk, stopped a car in which were several young men, and was driven home. On the following day the defendant was questioned about the matter, and admitted having had a difficulty with deceased, and said he guessed he hit him harder than he thought. Then he began pulling some money out of his pocket, and said he could prove that it was his and that he could prove where he got it.

One witness testified that shortly before the relator appeared at Ainsworth's home, he (Ainsworth) had in his watch vest pocket some bills, and especially a one hundred dollar bill.

Defendant's wife testified that he had been carrying this one hundred dollar bill some two or three days, but that she did not see same the day of the tragedy.

A witness testified that on Wednesday, before the homicide on Thursday, he, in company with deceased's daughter, heard Ainsworth say to his daughter that he did not have any money with which to pay her for some corn, and that he gave her a check for more than one hundred dollars.

One physician testified that the night Ainsworth remained out, exposed to the elements, was a very cold night, about twenty above zero; that the blow on his head, being the only mark of violence about his person, might have contributed to his death, and that his drinking whisky might have been the cause; that it was possible for a man to freeze to death when drunk.

Another physician testified that he had seen men walking about with no more severe wound than appeared on the deceased's head.

The defendant, Parker, testified that after leaving the deceased's home, and while they were good friends, they began drinking whisky which was supplied by the deceased that they started on their way home when Ains-

worth, who was more intoxicated than relator, Parker, became angry and quarrelsome just after the relator had assisted him to cross the creek. Parker further testified that Ainsworth advanced upon him after crossing the creek with his knife open, and that, in order to defend himself, Parker picked up a stick and struck the deceased on the head with it, knocking him into the creek; that deceased could not get out of the creek; and that after relator had assisted him from the creek, which he did upon deceased's promise to be good and close up his knife, which deceased complied with, relator insisted upon their going home, which the deceased declined to do, telling relator to go on home, and that he was not in a shape to go home.

No bottle of whisky was found by any of the witnesses who testified, though it is not so shown by all who may have had an opportunity to visit the scene after the school children found the body, nor were any of the school children offered as witnesses.

This court is bound by the same rules of law as is the trial court, on the hearing of a writ for *habeas corpus*, and the judgment of a *habeas corpus* court will not be disturbed, unless it is manifest to us that the trial court either tried the cause upon an erroneous conception of the law, or that the judgment is erroneous upon the facts.

Let it be remembered that the relator in the instant case had not been indicted, but was merely held upon a *mittimus* of a justice of the peace issued upon a judgment rendered upon a preliminary hearing.

For obvious reasons, we do not desire to analyze the facts of this case, but we feel that the trial court was in error in denying bail to this relator. The proof was neither evident, nor the presumption great, that the relator was guilty of murder: (1) Because the testimony of the physician and the nature of the wound raised a reasonable doubt as to whether the blow upon the head caused the death of the deceased; and (2) defendant's

testimony, which stands uncontradicted in this record, save as to minor and unimportant matters, that he acted in self-defense when he struck the deceased, is clear-cut, and is not unreasonable, and the theory of the state with reference to the deceased having money on his person, and the proof relative thereto, are contradictory.

Upon the state of this record, to say the least of it, there is a reasonable doubt as to relator's guilt of the crime of murder.

A further discussion of the facts, we feel, should not be indulged though many things could be pointed out as sustaining our view.

Section 29 of the Constitution of Mississippi of 1890 reads as follows:

"Excessive bail shall not be required; and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great."

The attorney-general cites *Crum* v. *State,* 64 Miss. 1, 1 So. 1, 60 Am. Rep. 44, which, as we see it, is not in point. The cases of *Street* v. *State,* 43 Miss. 1, *State* v. *Key,* 93 Miss. 115, 46 So. 75, and *Hill* v. *State,* 64 Miss. 431, 1 So. 494, have no application here, as these cases deal with the question of bail after conviction of a felony.

We have applied to this case the rule announced in *Wray* v. *State,* 30 Miss. 673; *Moore* v. *State,* 36 Miss. 137; *Ex parte Bridewell,* 57 Miss. 39; *Ex parte Pattison,* 56 Miss. 161; and *Ex parte Hamilton,* 65 Miss. 147, 3 So. 241.

It cannot be said that the proof is evident, nor the presumption great, where there is found a reasonable doubt of the guilt of the prisoner.

The relator is entitled to bail. Although this record discloses no proof as to the ability of the relator to give bail in this case, taking every angle of the case, and viewing it as a whole, we think the relator is entitled to be admitted to bail in the sum of five thousand dollars, and that the judgment of this court should recite that the

sheriff of Smith county be directed to enlarge relator upon bail, when he shall have given bond, conditioned according to law, with sureties to be approved by him, in said sum of five thousand dollars.

Reversed, and judgment here for relator.

*Reversed.*