# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01780-COA

VADELL JOHNSON                                                 APPELLANT
A/K/A VADELL C. JOHNSON

v.

STATE OF MISSISSIPPI                                            APPELLEE


DATE OF JUDGMENT:            09/19/2013
TRIAL JUDGE:                 HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:   BOLIVAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      EDWARD J. BOGEN JR.
ATTORNEYS FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                             BY: JOHN R. HENRY JR.
                                 BILLY L. GORE
NATURE OF THE CASE:          CIVIL - OTHER
TRIAL COURT DISPOSITION:     REFUSED TO GRANT WRIT OF HABEAS
                             CORPUS
DISPOSITION:                 AFFIRMED - 11/18/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     The Double Jeopardy Clause of the Fifth Amendment "protects against a second
prosecution for the same offense after acquittal."[1]  It also "protects the accused from attempts
to relitigate the facts underlying a prior acquittal."[2]  In his petition for a writ of habeas
corpus, Vadell Johnson invoked this latter protection.  He argued he could not be prosecuted

_____

[1] *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *North Carolina v. Pearce*, 359
U.S. 711, 717 (1969)).

[2] *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)).

for possession of a weapon by a convicted felon without relitigating the same facts of his earlier misdemeanor stalking convictions.

¶2.    But missing from Johnson's argument is a "prior acquittal," in which the jury resolved the underlying facts in his favor.  Instead, what we have here are carefully crafted guilty pleas, where Johnson's attorney successfully limited his client's admission to "threatening with no weapon"—which is "simple stalking"—instead of an admission he threatened two women "with a weapon" as charged—which would have been aggravated stalking, a felony.

¶3.    Johnson's attorney not only worked out lesser charges for Johnson, but he obviously had one eye down the road on a separate weapon-possession charge his client faced. And he hoped his client's omitting any mention of a gun when pleading to the stalking charges would factually bind the State, preventing a conviction on the felon-in-possession-of-a-firearm charge.  While this was no doubt wise lawyering, the United States Supreme Court has emphasized that "the taking of a guilty plea is not the same as an adjudication on the merits after full trial" for double-jeopardy purposes.[3]

¶4.    Since the particular fact issue—whether Johnson, an admitted convicted felon, had possessed a gun—was not litigated in the prior stalking matter, there can be no impermissible relitigation in the prosecution of the felon-in-possession charge.  For this reason, we must agree with the circuit court that the double-jeopardy claim Johnson raised in his petition entitled him to no relief.  We thus affirm the circuit court's refusal to grant a writ of habeas corpus.

**Background**

---

[3]    *Ohio v. Johnson*, 467 U.S. 493, 500 n.9 (1984).

2

¶5.    In Mississippi, if a person "makes a credible threat" to someone, knowing his "conduct would cause a reasonable person to fear for . . . her own safety," he is guilty of misdemeanor stalking. Miss. Code Ann. § 97-3-107(1)(a) (Rev. 2014). But that stalking becomes a felony if the person used or displayed a deadly weapon when making the threat, with the intent to place his victim in fear of death or serious bodily injury. Miss. Code Ann. § 97-3-107(2)(a)(i), (2)(b) (Rev. 2014).

¶6.    While free on bond pending trial for murder, Vadell Johnson was arrested on two counts of stalking. The charges were based on two women's claims that Johnson pulled a gun on them and threatened to kill them. According to one victim, Johnson had "jump[ed] out of his car with a silver handgun pointed at her saying, 'yall bitches better keep my name out yall mouth before I kill one of yall bitches,' and started beating on her car window." The other victim similarly accused Johnson of "pulling a gun on her and threaten[ing] to kill her."

¶7.    While he was tried and convicted in justice court on two counts of "threatening with a weapon," he was sentenced as a misdemeanant, as the justice court has no jurisdiction over felonies. *See* Miss. Const. art. 6, § 171.

¶8.    Johnson appealed to the county court, which stayed the judgment pending a de novo trial. *See* Miss. Code Ann. § 99-35-1 (Rev. 2007). Right after he filed his appeal, Johnson was arrested on another charge—possession of a weapon by a convicted felon.[4] *See* Miss. Code Ann. § 97-37-5(1) (Rev. 2014). This charge sprung from the same encounter with the two women who accused him of pointing a gun at them and threatening to kill them.

---

[4] Johnson had previously been convicted by the State of Louisiana for conspiring to distribute cocaine.

¶9.    Before the stalking charges were tried anew, Johnson's counsel worked out a plea deal. Johnson agreed to plead guilty to two counts of simple stalking and pay a $1,222.50 fine. At the plea hearing, Johnson's counsel stressed "that the plea that [Johnson has] entered today is to the charge of threatening and that he is not entering a plea to threatening with a weapon, that the weapons charge is not part of the plea that he's entering today." The county court's order of conviction echoed Johnson's specified plea of "two counts of threatening without a weapon."

¶10.    Immediately following this county-court conviction, Johnson, who was being held without bond on the felon-in-possession-of-a-firearm charge, petitioned the circuit court for a writ of habeas corpus. In this petition, he claimed he had been "tried" in county court on two counts of threatening with a gun but had been "found guilty of two counts of [t]hreatening with *no* weapon involved." Thus, he asserted the State could not lawfully hold him on the charge of felon in possession of a weapon.

¶11.    The circuit court refused to grant the writ, finding Johnson was not entitled to any relief based on his claims of double jeopardy and the doctrine of res judicata. Johnson timely appealed.

**Discussion**

***I.     No Requirement to Conduct a Hearing***

¶12.    Johnson's first assignment of error is procedural. Unlike *post*-conviction requests for habeas corpus relief, which are governed by the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1 *et seq.* (Rev. 2007 & Supp. 2014), *pre*-conviction requests are governed by the general habeas corpus statutes, Miss. Code Ann.

4

§ 11-43-1 *et. seq*. (Rev. 2012), as well as Uniform Rule of Circuit and County Court 2.07(A). Recognizing this, Johnson cites section 11-43-33 and Rule 2.07(A)(9)(a), in urging the circuit court was required to conduct an evidentiary hearing before denying his petition. And he labels the court's "failure" to hold this hearing as reversible error.

¶13. But neither the statutes nor rules mandate a hearing upon *every* petition for a writ of habeas corpus. Instead, both contemplate scenarios, such as this one, where the petition should be summarily dismissed on its face. *See* Miss. Code Ann. § 11-43-11 (Rev. 2012); URCCC 2.07(A)(6)(c). Granting a writ of habeas corpus upon application is not mandatory. *Lewis v. State*, 153 Miss. 759, 770, 121 So. 493, 495 (1929). And under both section 11-43-11 and Rule 2.07(A)(6)(c), the court may refuse to grant the writ if it is manifest from the showing made in the petition that the person is not entitled to any relief.[5]

¶14. It is only when the court *grants* the writ that it must then conduct a hearing and "either discharge, commit, admit to bail, or remand the prisoner, or award the custody to the party entitled thereto, as the law and the evidence shall require[.]" Miss. Code Ann. § 11-43-33 (Rev. 2012); URCCC 2.07(A)(9)(a). *See also Smith v. Banks*, 134 So. 3d 715, 719 (¶12) (Miss. 2014) ("*After the writ of habeas corpus is issued*, the habeas corpus court must hold a hearing on the matter, and 'shall either discharge, or commit, or admit to bail, or remand the movant as the law and the evidence shall require.'" (emphasis added) (quoting

_____

[5] Section 11-43-11 functions the same as the post-conviction-relief statute, Mississippi Code Annotated section 99-39-11 (Supp. 2014), which gives the court the authority to summarily dismiss a petition for post-conviction relief "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief[.]"

URCCC 2.07(A)(9))). Here, the court was not required to hold a hearing because no writ of habeas corpus was granted.

¶15. So the real question is substantive—Did the court properly refuse to grant the writ because it was manifest "from the showing made by the petition" that Johnson was not entitled to relief? Miss. Code Ann. § 11-43-11.

## II. *No Showing Johnson Was Entitled to Relief*

¶16. Like any other dismissal based on the pleadings, we review the circuit court's refusal to grant a writ of habeas corpus de novo. *Tubwell v. Grant*, 760 So. 2d 687, 690 (¶11) (Miss. 2000). Applying this standard, we reach the same conclusion as the circuit court—Johnson was not entitled to relief based on the Fifth Amendment's protection against double jeopardy. *See* U.S. Const. amend V.

### A. *Double Jeopardy Clause*

¶17. The Fifth Amendment's Double Jeopardy Clause is applicable to the states through the Fourteenth Amendment. It "provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Brown v. Ohio*, 432 U.S. 161, 164 (1977) (quoting U.S. Const. amend. V).[6] As interpreted by the United States Supreme Court, this clause "protects against a second prosecution for the same offense after acquittal." *Id.* at 165 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). It also protects from "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." *Id.*

---

[6] Similarly, under the Mississippi's Constitution, "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense[.]" Miss. Const. art. 3, § 22.

6

¶18.    "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."  *Id.* (citations omitted).  But "[w]here successive prosecutions are at stake, the guarantee . . . protects the accused from attempts to relitigate the facts underlying a prior acquittal."  *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)).  *See also id.* at 166 (listing the additional protection "from attempts to secure additional punishment after a prior conviction and sentence").

¶19.    The test for determining if "two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment" is the "*Blockburger* test."  *Id.* at 166 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  The *Blockburger* test focuses on the elements of each crime.  *Id.*  "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."  *Id.* (citation omitted).

¶20.    But the *Blockburger* test is not the only measure for deciding if "successive prosecutions impermissibly involve the same offense."  *Id.* at n.6.  "Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."  *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)).

¶21.    It is this extra-*Blockburger* type of bar—the one articulated in *Ashe*—which Johnson claims applies.  On appeal, Johnson does not challenge the circuit court's *Blockburger* analysis, and for good reason.  The two crimes of aggravated stalking and possession of a

7

weapon clearly each have elements that the other does not. *Compare* Miss. Code Ann. § 97-3-107 *with* Miss. Code Ann. § 97-37-5. So the *Blockburger* test was satisfied.

### B.    *Collateral Estoppel*

¶22.    What Johnson challenges is the court's conclusion that the State was not collaterally estopped from trying him on the felon-in-possession-of-a-weapon charge. Johnson claims the circuit court overlooked that this preclusive doctrine[7] applies in criminal cases too.

¶23.    In *Ashe*, the Supreme Court recognized that the doctrine of collateral estoppel is encompassed by the Fifth Amendment's guarantee against double jeopardy. *Ashe*, 397 U.S. at 443-46. The Court said this doctrine was not to be understood in the "hypertechnical sense," as it is often applied in civil cases.[8] *Id.* at 444. Rather, "collateral estoppel," for criminal purposes, should be understood in its most basic sense, "mean[ing] simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443.

¶24.    In *Ashe*, six poker players had been robbed by three or four gunmen. Ashe was tried for the robbery of one of the players. *Id.* at 437-38. The jury had been instructed that it should find Ashe guilty if he had participated in the robbery in any way, even if he did not personally rob the victim. The jury acquitted Ashe. Over Ashe's objection, he then was tried for the robbery of another player. *Id.* at 439. This time he was convicted. *Id.* at 440. The

---

[7] Johnson refers to this doctrine as "res judiciata." We use the more specific term "collateral estoppel," as that is the term used by both the United States Supreme Court and the Mississippi Supreme Court when discussing this concept. *See Ashe*, 397 U.S. at 443; *State v. Smith*, 278 So. 2d 411, 415 (Miss. 1973).

[8] For this reason, we find as misplaced Johnson's argument that res judicata applies because the "four identities" test for *civil* litigation has been met.

8

Supreme Court reversed the denial of Ashe's writ of habeas corpus, finding, since the first jury had determined Ashe was not one of the robbers, the State could not "constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446.

¶25. Johnson insists the same principle of collateral estoppel applies in this case. Because the stalking and later-lodged weapon-possession charges were based on the same set of facts—Johnson's pulling a gun on the two women and threatening to kill them—he argues the State is precluded from relitigating these facts. But the missing element in Johnson's collateral-estoppel claim is *litigation*. Unlike Ashe, Johnson was not acquitted based on the jury's finding he had no weapon in his possession. Instead, Johnson was merely permitted by the circuit court to plead guilty to the lesser-included charge of simple stalking. And according to the Supreme Court, "the taking of a guilty plea is not the same as an adjudication on the merits after full trial, such as took place in *Ashe v. Swenson*." *Ohio v. Johnson*, 467 U.S. 493, 500 n.9 (1984) (rejecting the collateral-estoppel claim by a defendant who had pled guilty to a lesser charge); *see also Brown*, 432 U.S. at 165-66 (citing *Ashe* for the principle that the Double Jeopardy Clause "protects the accused from attempts to relitigate the facts *underlying a prior acquittal*" (emphasis added)).

¶26. Further, even if Johnson had been acquitted by a jury of aggravated stalking—i.e., threatening *with* a weapon—the issue of whether Johnson *possessed* a gun would not necessarily have been foreclosed. Aggravated stalking requires proving, not merely that the defendant had a gun in his possession, but that he *used* or *displayed* the deadly weapon while making a credible threat with the intent to put his victim in fear of death or serious bodily injury. Miss. Code Ann. § 97-3-107(2)(a)(i). In other words, it could have still been unclear

9

from the jury's acquittal on the top charge of aggravated stalking whether Johnson nonetheless possessed a gun, even though he did not use it to threaten his two victims.

¶27.    As the Supreme Court directed in *Ashe*, to determine if collateral estoppel applies to a subsequent prosecution, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citation omitted); *see also State v. Smith*, 278 So. 2d 411, 415 (Miss. 1973).  This instruction highlights why Johnson's collateral-estoppel argument ultimately misses its mark—because the record of the prior stalking proceeding contains no evidence, jury instructions, jury verdict, etc., from which to conclude certain fact issues are now foreclosed based on the jury's decision.

¶28.    It was indeed skillful lawyering on Johnson's counsel's part to have the record reflect Johnson was being convicted of "threatening with no weapon."  But carefully crafting  the factual basis of the pleas does not bar the State from later pursuing the felon-in-possession-of-a-weapon charge.  Whether Johnson, a convicted felon, was in possession of a weapon, was never litigated and resolved in Johnson's favor.  So there will be no "relitigation" of this fact by the State in violation of the Double Jeopardy Clause.

¶29.    Because Johnson is not entitled to relief on his collateral-estoppel claim, we affirm the circuit court's refusal to grant a writ of habeas corpus.

¶30.    **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

        **LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND**

10

**FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**